NOT FOR PUBLICATION [16, 26]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                  :
NICHOLAS E. PURPURA, et al.,      :
        Plaintiffs                :
                                  :        Civil Action No. 10-04814
v.                                :
                                  :             **OPINION**
KATHLEEN SEBELIUS et al.          :
        Defendants                :
                                  :
_____ :

**WOLFSON, United States District Judge**:

Presently before the Court is a motion by Defendants Kathleen Sebelius, Timothy F.

Geithner and Hilda L. Solis, individually and in their official governmental capacities

(collectively "Defendants"), to dismiss the Complaint of Plaintiffs, pro se, Nicholas E. Purpura

and Donald R. Laster, Jr. for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1).[1]  This action is one of many challenges to the Patient Protection and Affordable Care

Act ("ACA" or "Act"), brought by various individuals and organizations throughout the country.

In the Complaint, Plaintiffs allege that the Act violates numerous Constitutional provisions and

conflicts with several federal statutes.   As a result, Plaintiffs seek a declaration that the Act is

_____

[1] The Court is compelled to note that although Plaintiffs claim to represent "We the People" and the "citizens of the State of New Jersey," Compl. ¶¶ 2, 11, Plaintiffs are not attorneys and this lawsuit has not been brought as a class action.  Moreover, no individual signed the Complaint other than the named Plaintiffs.  Thus, the Court considers this as a challenge to the Act  brought solely on behalf of the two individual Plaintiffs – Messrs. Purpura and Laster.

1

unconstitutional and ask this Court to enjoin Defendants from its enforcement.

In response, Defendants filed the instant Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) arguing that the Complaint does not establish Plaintiffs' standing to challenge the Act. Specifically, Defendants contend that the Complaint  " reveals nothing about plaintiffs other than their names, their addresses, their affiliations with various political groups in New Jersey, and their disapproval of the challenged statute." Defs' Br. at 1.   The Court has considered the motion without oral argument pursuant to Fed. R. Civ. P. 78.[2]  For the reasons set forth below, Defendants' motion is GRANTED and the Complaint is DISMISSED.

## I. BACKGROUND

On March 23, 2010, President Barack Obama signed into law the Patient Protection and Affordable Care Act, Pub. L. No 111-148, 124 Stat. 199(2010), amended by Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010).   The Act, a

---

[2] The Court understands that Plaintiffs have requested oral argument.  Federal Rule of Civil Procedure 78 expressly grants a district judge wide discretion to decide whether to hear oral argument on a particular motion, or instead, to decide it on the papers.  Fed. R. Civ. P. 78. Similarly, the Due Process Clause of the Fifth Amendment does not compel oral argument on civil motions.  See e.g., Greene v. WCI Holdings Corp., 136 F.3d 313, 316 (2d Cir.1998) ("we find no merit in [appellant's] claim that a dismissal of a complaint without an oral hearing violates due process."); Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 391 (6th Cir.1975) (denial of an oral hearing before granting a motion to dismiss does not violate "fundamental notions of fairness and due process of law"); Spark v. Catholic Univ., 510 F.2d 1277, 1280 (D.C.Cir.1975) ("due process does not include the right to oral argument on a motion"); Dredge Corp. v. Penny, 338 F.2d 456, 464 n. 14 (9th Cir.1964) ("The opportunity to be heard orally on questions of law is not an inherent element of procedural due process, even where substantial questions of law are involved.").  Because of the limited nature of this Court's inquiry, the Court finds that oral argument would be an unnecessary use of the parties' and this Court's resources and this motion will be decided on the papers.

broad piece of health care reform legislation, was enacted to "provide affordable health insurance, and to reduce the number of uninsured Americans 'and the escalating costs they impose on the healthcare system.'"  New Jersey Physicians, Inc. v. Obama,  No.10-1489, 2010 WL 5060597, at *1 (D.N.J. Dec. 8, 2010) (SDW) (quoting Thomas More Law Ctr. v. Obama, 720 F. Supp. 2d 882, 886 (E.D. Mich. 2010)).

As part of the effort to provide health insurance to uninsured Americans, the Act includes a requirement to maintain minimum essential coverage ("Individual Mandate") which provides that "[a]n applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month."  26 U.S.C. § 5000(A)(a) (2010).[3,4]   According to Congress, the Individual Mandate is essential because absent such a "requirement, many individuals would wait to purchase health insurance until they needed care," and such a result would undermine the Act's purpose of lowering the number of uninsured Americans.  Act §§ 1501(a)(2)(G), 10106(a).

Importantly, if an individual fails to obtain minimum essential coverage, "a monetary penalty will be imposed and included in that taxpayer's tax return."  Id. § 5000A(b).  The Act, however, provides various exceptions to the penalty including that no penalty shall be imposed

---

[3] An "applicable individual" is defined as any individual other than (1) those with certain religious exemptions; (2) those not lawfully present in the United States; and (3) those incarcerated.  Id. § 5000A(d).

[4] The Act defines "minimum essential coverage" as (1) a government-sponsored healthcare program (e.g. Medicare, Medicaid); (2) coverage under an eligible employer-sponsored plan; or (3) other eligible healthcare plans obtained through the market.  Id. § 5000A(f).

upon: (1) individuals who cannot afford coverage; (2) individuals whose income falls below the tax filing threshold; (3) members of Indian tribes; (4) those without health coverage for only short time periods; and (5) those who "have suffered a hardship with respect to the capability to obtain coverage under a qualified health plan." Id. § 5000A(e).

On September 20, 2010, Plaintiffs filed a fifteen count Complaint against the Defendants alleging numerous constitutional violations arising from the passage, and eventual enforcement, of the Act.[5]  At the outset, the Court is compelled to note that the Complaint contains a litany of conclusory allegations concerning the Act's allegedly illegal, unconstitutional and fraudulent nature.   For example, in Counts One and Fourteen, Plaintiffs allege that the Act violates Articles One and Six of the Constitution since "the Senate bills were originated completely independent of any House bill [and] the Senate may not originate revenue rasing bills." Compl.  ¶ 20.  In Count Six, Plaintiffs allege that Act violates Article II of the Constitution because it was not signed into law by a person eligible to be President of the Untied States. Compl. ¶¶ 55-61.  In Count Eleven, Plaintiffs allege that the Act violates the First Amendment because it allegedly exempts "practitioners of the Islamic or Muslim religion and the Amish religious sects,"  Compl. ¶ 90.[6]  In Count Twelve, Plaintiffs allege that the Act violates unspecified anti-trust laws.

---

[5] On October 1, 2010, before properly serving the Untied States, Plaintiffs filed a petition for a temporary restraining order ("TRO") barring the implementation of the Act.  On October 20, 2010, this Court denied Plaintiffs' TRO.  Thereafter, Plaintiffs filed a "Reply Affidavit" in support of the TRO, which this Court construed as a request for reconsideration, and, on October 29, 2010, the Court denied the request.  On December 9, 2010, Plaintiffs filed a Motion for Summary Judgment.  In response, Plaintiffs filed the instant Motion to Dismiss.  Because this Court grants Defendants' motion, Plaintiffs' motion is denied as moot.

[6]The Court is compelled to note that Plaintiffs have not pointed to any particular provisions of the Act in support of their allegations, and the Court will refrain from commenting on the accuracy of these allegations.

Compl.¶ 94.   In Count Thirteen, Plaintiffs allege that the Act violates Title VII and the

Fourteenth Amendment because it allegedly "allocates $2.55 billion in federal funding to

historically black and minority serving colleges," and because it taxes tanning salons which

"punishes one class of citizen" and "'exempts citizens of color' that have no need or desire to

purchase said services."  Compl. ¶¶ 105, 107.   In addition, the Court understands Plaintiffs to

assert at least seven counts challenging the minimum essential coverage provision of the Act.

See, e.g., Compl. ¶¶ Counts Two, Three, Four, Seven, Nine, Ten, and Fourteen.  Glaringly absent

from the Complaint, however, are any factual allegations concerning how Plaintiffs Purpura and

Laster will be affected by the Act or any of its provisions.   At best, in their opposition to

Defendants' motion, Plaintiffs contend that they are "personally effected [sic] by the 'Act'" since

"Mr. Purpura is 68 years of age and loses "Medicare Advantage["]; whether he chooses or not to

use it, privacy of his medical records; a violation of Amendment 4; Mr. Laster is handicapped

and will now be tax [sic] on medical devices that cross State lines, and will suffer the restrictions

to certain drugs, to[sic] that might not meet the cost accounting decision by government

bureaucrat."  Pls.' Opposition at n.6.  Although these "facts" were not included in the Complaint

or by Affidavit or Certification attached to any of Plaintiffs' filings, the Court will accept these

facts as true for the purpose of deciding this motion.

## II.  STANDARD OF REVIEW

"It is a principle of first importance that federal courts are courts of limited jurisdiction."

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure

§ 3522 (2d ed.1984).  Accordingly, federal courts are duty-bound to ensure that they have

jurisdiction over the matters before them.  As noted previously, the instant motion was filed as one to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction; thus, the Plaintiffs bear the burden of establishing this Court's jurisdiction.  Kehr Packages, Inc., v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial"  or "factual."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir.2006) (citations omitted).  Facial attacks "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."  Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n. 4 (3d Cir.2002) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n. 7 (3d Cir.2001)); see also In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir.2005) (In evaluating "facial" subject matter jurisdiction attacks, the court ordinarily accepts all well-pleaded factual allegations as true, and views all reasonable inferences in the plaintiff's favor).  Essentially, a "facial" challenge by the defendant contests the adequacy of the language used in the pleading.  Turicentro, 303 F.3d at 300 n.4.  Factual challenges, on the other hand, attack the factual basis for subject matter jurisdiction; that is, in a factual challenge to jurisdiction, the defendant argues that the allegations on which jurisdiction depends are not true as a matter of fact.  See Turicentro, 303 F.3d at 300.  As such, the court is not confined to the allegations in the complaint, but may look beyond the pleadings to decide the dispute.  Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir.2000) (citing Mortensen, 549 F.2d at 891).  Because the Defendants argue that Plaintiffs have not adequately alleged standing, the Court will consider this as a facial challenge to this Court's subject matter jurisdiction.

## III. DISCUSSION

### A.  STANDING

Pursuant to Article III of the United States Constitution, this Court may only exercise jurisdiction over an actual case or controversy.  "The doctrine of standing is one of several doctrines that reflect this fundamental limitation."  Summers v. Earth Island Inst., 129 S. Ct 1142, 1149 (2009).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  In other words, standing is a "threshold question."  Id.

The Supreme Court has described the following requirements as the irreducible constitutional minimum of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (internal quotations and citations omitted).

Although a plaintiff must establish all three elements, the "injury-in-fact" element is often the most determinative element of standing.  Toll Bros., Inc., v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009).  The Supreme Court has explained that in order for an injury-in-fact to

7

be particularized, it must "affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561 n.1.   A plaintiff will fail to meet this element if the plaintiff merely raises a "generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." Id. at 573-74; see also United States v. Richardson, 418 U.S. 166, 179-80 (1974) ("[T]o invoke judicial power the claimant must have a 'personal stake in the outcome,' or a 'particular, concrete injury,' or 'a direct injury,' in short, something more than 'generalized grievances'. . . .") (citations omitted); Warth v. Seldin, 422 U.S. 490, 499-500 (1975) (rejecting the assertion of a "generalized grievance" shared in substance by a large class of citizens as sufficient grounds for a particularized injury-in-fact). The Supreme Court has further held that by refusing to hear "generalized grievances," the power of judicial review is not wielded more than is necessary to resolve an actual dispute or controversy. Lance v. Coffman, 549 U.S. 437, 441 (2007).

Importantly, a plaintiff can meet the injury-in-fact requirement by alleging harm brought about by a governmental statute, but only by demonstrating a clear and realistic danger of direct injury as a result of the operation and enforcement of the statute. Babbit v. UFW Nat'l Union, 442 U.S. 289, 298 (1979).   However, a plaintiff does not need to wait for the statute to go into effect; "[i]f the injury is certainly impending that is enough." Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923).  That said, in challenging a federal statute – as Plaintiffs do here – the challengers must show that they have already sustained, or are in immediate and certain danger of sustaining, a real and direct injury. O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Massachusetts v Mellon, 262 U.S. 447, 488 (1923).

8

## B.  OTHER CHALLENGES TO THE ACA

As discussed above, since its passage, there have been several challenges to the Act

brought by both individual and organizational plaintiffs.  Before turning to the merits of the

matter before me, this Court will survey the relevant decisions of other district courts that have

considered the issue of standing.[7]

Initially, the Court notes that at least one court in this district has already considered and

dismissed a challenge to the ACA on the basis of standing.  In New Jersey Physicians, Inc.,  the

court considered whether Patient Roe, an individual citizen, had standing to challenge the Act's

Individual Mandate provision based on either a present or future injury.  2010 WL 506059, at

*1,4.  There, Patient Roe had asserted standing on the grounds that he had a concrete,

particularized and actual injury since he did not have health insurance, had no plans to purchase

health insurance in the future and because the Act will take effect in 2014.  Id.  Thus, Roe argued

that the Individual Mandate will require him to purchase insurance or pay the penalty upon its

effective date.  Id.  The court, however, found that Roe's claims were "hypothetical or

speculative, at best."  Id.  Specifically, the court explained that Roe's alleged injury was not

_____

[7]In light of the growing jurisprudence on the subject, the Court has not undertaken a thorough review of all the cases to have ruled on the ACA, but, instead, since the Plaintiffs here are individuals, the Court will review some of the cases that have considered the issue of the individual plaintiff and standing to challenge the Act.  However, the Court notes that some of the challenges to the Act have been brought by various States as plaintiffs.  See, e.g., Florida ex rel. Bondi v. U.S. Dep't of Health and Human Serv., No. 3:10-cv-91-RV/EMT, 2011 WL 285683, at *9, *10 (N.D. Fla. Jan. 31, 2011) (finding standing for at least two of the State plaintiffs, alleging different injuries-in-fact than those alleged by the individual plaintiffs); Virginia ex rel. Cuccinelli v. Sebelius, 702 F. Supp. 2d 598, 607 (E.D. Va. 2010).  In those cases, the courts have held that States have standing to challenge the Act since the states are seeking to protect their quasi-sovereign interests and, as a result, are often granted "special solicitude" in standing analyses.  See, e.g., Massachusetts v. EPA, 549 U.S. 49, 520 (2007).  Because neither of the Plaintiffs here are States, such reasoning is inapplicable.

"certainly impending" since Roe may not be subject to the penalty because he may be able to obtain insurance through an employer by 2014; moreover, the court noted that even if he did not obtain insurance, he may qualify for one of the exceptions to the penalty.  Id.  Thus, the court found that there was a "real possibility that Roe will neither have to pay for insurance nor be subject to the penalty."  Id.  In addition, the court found that Roe had not alleged that he was suffering a present injury since, for example, Roe did not allege that the Act imposed "financial pressure" upon him or that "he ha[d] 'arranged [his] personal affairs such that it will be a hardship for [him] to either pay for health insurance or face penalties under the Act' . . . or that he has to forego spending money in order to pay for the insurance."  Id.  As a result, the court found Roe's allegations of injuries based on the effect and enforcement of the ACA to be "purely hypothetical" and dismissed his complaint for lack of standing.  Id.

Similarly, in Baldwin v. Sebelius, the court found that an individual plaintiff lacked standing to challenge various provisions of the Act including the Individual Mandate and could not assert general challenges to the Act under various constitutional provisions such as the Equal Protection clause.  Baldwin v. Sebelius, No. 10-CV-1033, 2010 WL 3418436, at *4 (S.D. Cal. Aug. 27, 2010).  In relevant part, the Court noted that plaintiff had not alleged "any particularized injury stemming from the" Act.  Id. at *1,2.  Specifically, the court explained that Baldwin did "not indicate whether he has health insurance or not.  But that is of no moment because, even if he does not have insurance at this time, he may well satisfy the minimum coverage provision of the Act by 2014: he may take a job that offers health insurance, or qualify for Medicaid or Medicare, or he may choose to purchase health insurance before the effective

date of the Act." Id. at 3.  Moreover, the court noted that Baldwin "alleges no facts that he

would not purchase heath insurance in 2014, but for the requirements of the Act." Id. at *4.[8]

     In Shreeve v. Obama, a group of approximately 25,000 individuals and entities sought to

challenge the ACA by alleging that the Act violated various constitutional provisions, including

Congress' enumerated powers in Article I, § 8 and the Tenth Amendment of the United States

Constitution.  No. 1:10-CV-71, 2010 WL 4628177, at *1 (E.D. Tenn. Nov. 4, 2010).  The court

found that despite the lengthy list of constitutional violations set forth in the complaint, none of

the plaintiffs could satisfy the particularized injury-in-fact requirement because none of them

alleged that they currently lacked health care coverage, that they would be compelled by the Act

to purchase the requisite coverage or otherwise pay a penalty, nor that they would have had to

rearrange their finances or forego planned spending in order to accommodate the future

requirements of the Act.  Id.  at *4.  ("[N]ot one plaintiff has shown 'such a personal stake in the

outcome of the controversy as to assure . . . concrete adverseness' by alleging a particularized

injury stemming from the ACA.") (quoting Massachusetts v. E.P.A., 549 U.S. at 497).

     Similarly, in Bryant v. Holder, ten individuals without any form of health insurance

---

[8]The Baldwin court also dismissed plaintiff's claims that the Act violated his right to privacy.
2010 WL 3418436, at *4.  In that regard, the court found that Baldwin did not and could not
allege that the Act compelled him to provide personal information or that such information had
been used improperly or in violation of physician-patient privilege.  Id.  Further, the court
explained that Baldwin could not show that his medical decisions would be affected by the Act,
for he failed to show that he would even be compelled to purchase health insurance by the Act's
Individual Mandate provision.  Id.   Finally, the court noted that Baldwin did not cite any
provision of the Act which would force him personally to be subject to unwanted medical
treatment.  Id.  As a result, the Court explained, "Baldwin fails to allege a particularized injury
stemming from violation of his privacy rights. If he has health insurance, the provisions of the
Act may well have no affect on him; if he does not have insurance, he alleges no facts that he
would not purchase health insurance in 2014, but for the requirements of the Act."  Id.

coverage argued that the Individual Mandate was passed in excess of Congress' Commerce

Clause power, constituted an unconstitutional taking, violated the Fifth and Fourteenth

Amendment substantive due process rights, and violated the Tenth Amendment.  No. 2:10-CV-

76-KS-MTP, 2011 WL 710693, at *2 (S.D. Miss. Feb. 3, 2011).  There, the court held that

despite plaintiffs' claims that the Individual Mandate would force them to rearrange their

finances in order to purchase undesired health insurance or pay a penalty, the plaintiffs lacked

standing because their allegations of direct injury were legal conclusions unsupported by facts.

Id. at 11 ("Plaintiffs simply alleged that they will be subject to the minimum essential

coverage—a bare legal conclusion which the Court may not accept as true.").

        Conversely, several courts that have considered challenges to the Act have held that

certain individual plaintiffs have standing to sue.  In Thomas More Law Center v. Obama, 720 F.

Supp.2d 882 (E.D.Mich.2010), several individual plaintiffs challenged the Individual Mandate

and asserted standing on the ground that they had arranged their personal affairs such that it

would be a hardship for them to have to pay for health insurance or face a penalty under the Act.

Id. at 887-88.   There, the court did not address whether the plaintiffs' alleged future injury was

sufficient to confer standing, since plaintiffs had alleged a present injury, i.e., "being compelled

to reorganize their affairs" to prepare for the impending requirement to purchase health

insurance.  Id. at 888.  Moreover, the court found that plaintiffs' injuries were "fairly traceable to

the Act" since "[t]here is nothing improbable about the contention that the Individual Mandate is

causing plaintiffs to feel economic pressure today."  Id. at 889.  Indeed, the court held that

plaintiffs' "decisions to forego certain spending today, so they will have the funds to pay for

health insurance when the Individual Mandate takes effect in 2014, are injuries fairly traceable to

the Act  for the purposes of conferring standing." Id.

Similarly, in Goudy-Bachman, two individuals (the "Bachmans") challenged the ACA's Individual Mandate as an unconstitutional exercise of Congress' powers under the Commerce Clause or other enumerated powers in Article I § 8 of the U.S. Constitution.[9]  2011 WL 223010, at *1, *3.  There, the Bachmans asserted a particularized injury on the grounds that they are self-employed, do not currently have health insurance, do not and will not qualify for Medicare in 2014, and do not fall under an exception to the Individual Mandate's penalty provision.  Id. at *2. Further, the Bachmans alleged that they do not intend to purchase health insurance before the ACA goes into effect but that they would comply with the law if it is found valid.  In addition, the Bachmans averred that their injury was imminent since, if they are forced to purchase health insurance or pay a penalty when the Act goes into effect in 2014, they will not be able to afford to presently purchase a new vehicle with a five-year financing plan, the only plan affordable to them.  Id. at *3.  In other words, the Bachmans argued that but for the Individual Mandate, they would have enough disposable income to afford the vehicle.  Id.  The court agreed that Plaintiffs had standing.  In Goudy-Bachman, as in Thomas More Law Ctr., the court held that the economic pressure of rearranging finances and making concrete changes in a current financial plan was an injury-in-fact sufficient to satisfy the standing requirements.  Id. at *5, *6. Specifically, the court found that the decision to forego the purchase of a new vehicle was not abstract or remote, but based on compliance with a law that will go into effect at a designated

---

[9]      The Goudy Bachman court appears to intend to address the challenge in two parts.  In its initial opinion, the court ruled on  jurisdictional issues including standing and ripeness.  The Court however reserved ruling on the remaining substantive issues of whether the Bachmans "have stated a plausible claim that the mandate exceeds Congress's authority under the Commerce Claus."  Goudy-Bachman, 2011 WL 223010, at *12.

time in the near future.  Id. at *6.  Moreover, the court explained that the decision to forego the

purchase  was "fairly traceable" to the Individual Mandate and plaintiffs' attempt to ensure their

ability to comply with the provision once it goes into effect.  Id. at *7

Similarly, in Liberty University v. Geithner, No. 6:10-cv-00015-nkm, 2010 WL 4860299

(W.D. Va. Nov. 30, 2010), two individuals challenged the Individual Mandate claiming that its

impending enforcement forced them to "make 'significant and costly changes' in their personal

financial planning, necessitating 'significant lifestyle . . . changes' and extensive reorganization

of their personal and financial affairs."  Id.  There, the court found that those individual plaintiffs

sufficiently alleged an injury-in-fact to confer standing.  2010 WL 4860299, at *7.  Indeed, the

court explained that "[t]he present or near-future costs of complying with a statute that has not

yet gone into effect can be an injury in fact sufficient to confer standing."  Id. While the court did

acknowledge the uncertainty as to whether the plaintiffs would continue to fall within the

requirements of the ACA by 2014, the court explained that "[t]aking the allegations as true, it is

clear that the signficant adjustments that Plaintiffs must make to their financial affairs in

anticipation of the mandatory coverage requirements are fairly traceable to the Act's

requirements."  Id.   Accordingly, the court held that the individual plaintiffs had standing to

challenge the Individual Mandate.


### C.  THE PRESENT MATTER

As discussed above, Plaintiffs in the instant matter have alleged few, if any, facts

demonstrating the effect that the Act has on them currently or the effect that the Act will have in

the future.  At best, the Court understands Plaintiffs to allege that Mr. Purpura is 68 years old and

14

that the Act will cause him to lose "Medicare Advantage" and the privacy of his medical records. In addition, the court understands Plaintiffs to allege that Mr. Laster is handicapped and that the Act will cause him to "be tax[sic] on medical devices that cross State lines, and will suffer restrictions to certain drugs."   Considered on their own, as well as in light of the numerous challenges to the Act that have already come before district courts and these courts' standing analyses, it is clear that these allegations fail to establish Plaintiffs' standing to challenge any of the provisions of the Act.

Initially, the Court notes that to the extent Plaintiffs allege constitutional harms in Counts One, Five, Six, Eight, Eleven, Twelve, Thirteen and Fifteen, these harms are, at best, generalized grievances for which Plaintiffs have no standing.  For example, in Counts One and Fourteen, Plaintiffs claim that the Act violates Articles 1 and 6, in that the "Senate bills were originated completely independent of any House bill. [But] [t]he Senate may not originate revenue raising bills." Compl.¶¶ 19, 119.  Similarly, in Count Five, Plaintiffs allege that the "Act placed taxes on medical devices exported from the individual States."  Compl. ¶ 49.   In Count Six, Plaintiffs allege that the Act is unconstitutional because President Obama is "ineligible to hold the office of President."  Id. ¶ 56.  In Count Eight, Plaintiffs appear to allege that the Act is unconstitutional because it "grants access to the General Government unconditionally. . .to access and seize the private records of individuals."  Id. ¶ 70.  In Count Eleven, Plaintiffs allege that the Act violates the First Amendment and in Count Twelve that the Act violates unspecified "anti-trust" laws.  Id. ¶¶ 89-91, 94.  In Count Thirteen, Plaintiffs allege that the Act violates the Fourteenth Amendment because the Act provides funding to "historically black and minority serving colleges" and taxes tanning salons.  Compl. ¶ 105-113.  Finally, in Count Fifteen, Plaintiffs

allege that the Act encroaches on the sovereignty of the State of New Jersey.  Compl. ¶¶ 121-138.
In light of these conclusory statements alleging general harm under the Constitution, and in the
absence of any facts about the effect of these harms on Plantiffs as individuals, it is patently clear
to this Court that, contrary to what is clearly required to establish standing, Plaintiffs have not
alleged an injury in fact sufficient to establish standing.  See, e.g., Lujan, 504 U.S. at 561 n.1
(holding that for an injury-in-fact to be particularized, it must "affect the plaintiff in a personal
and individual way.").  Indeed, the Court finds that Plaintiffs' claims amount to nothing more
than "generally available grievance[s] about government—claiming only harm to [Plaintiffs']
and every citizen's interest in proper application of the Constitution and laws, and seeking relief
that no more directly and tangibly benefits him than it does the public at large "  Id. at 573-74.
As a result, the Court dismisses these Counts for lack of standing.

        In addition, the Court finds that in the remaining Counts of the Complaint – Counts Two,
Three, Four, Seven, Nine, Ten, and Fourteen – Plaintiffs appear to contest the Individual
Mandate provisions of the Act.  See, e.g., Compl. ¶ 29 ("[t]he Act requires that selected groups
of people. . . [to] engage in a specific type of commerce as dictated by "Act"); Compl. ¶ 45("The
various mandates in the Act are direct taxes that are required to be paid by individuals . . ."); 
Compl.¶ 65 ("[t]he Act unconstitutionally levies additional tax based on "gross income" for not
complying with the Act.").    As discussed above, when analyzing standing for purposes of
determining subject matter jurisdiction, a court  must initially determine whether Plaintiffs have
suffered an injury that is: (a) concrete and particularized; and (b) actual or imminent, and not
hypothetical or conjectural.  Lujan, 504 U.S. 560-61.   Plaintiffs here have failed to allege any
concrete or particularized harm, nor have they alleged that such harm is concrete and imminent.

Initially, the Court notes that Plaintiffs have not sufficiently alleged that they will be subject to the Act's Individual Mandate.  As discussed above, the courts that have addressed individual standing have required the plaintiffs to allege and demonstrate that they are or will be subject to the Act's provisions.   See, e.g., New Jersey Physicians, 2010 WL 5060597, at *4 (dismissing for lack of standing because the individual plaintiff failed to establish with certainty that he would fall under the Individual Mandate provision by 2014); Bryant, 2011 WL 710693, at *11 (dismissing for lack of standing where plaintiffs "simply alleged that they will be subject to the [Individual Mandate]—a bare legal conclusion which the Court may not accept as true"); Baldwin, 2010 WL 3418436, at *3 (dismissing for lack of standing after finding that "it is impossible to know now whether or not Plaintiff will be subject to or compliant with the Act in 2014"); cf. Goudy-Bachman, 2011 WL 223010, at *1 (concluding that plaintiffs' supporting documents and affidavits sufficiently showed that they would fall subject to the Individual Mandate provision, which was required for them to show standing).  Here, neither the Complaint nor the supporting documents nor the voluminous briefs sufficiently allege – or for that matter, allege at all –  that Plaintiffs will be subject to the Act's Individual mandate provision.[10]  For example, the Complaint does not indicate, inter alia, whether Plaintiffs currently have health insurance, whether they are currently employed or whether they may be employed in the future by an entity that will be required to provide health insurance under the Act.  See, e.g., Baldwin, 2010 WL 3418436, at *3.  Moreover, Plaintiffs have not alleged whether they may fall into one

---

[10]Notably, unlike the majority of the plaintiffs  to challenge the Act, Plaintiffs here have not provided affidavits, certification or any supporting documentation that would demonstrate the effects of the Act upon them personally. The only facts that the Court could glean from Plaintiffs' voluminous filings are the facts set forth in footnote six of Plaintiffs' Opposition to this motion.  See pg. 5, supra.

of the exemptions to the Individual Mandate, i.e., the insufficient income exemption .  See, e.g.,

New Jersey Physicians, Inc., 2010 WL 5060597, at *4.  Further, Plaintiffs have not alleged  that

they will refrain from purchasing health insurance before the Mandate becomes effective.  See,

e.g., Goudy-Bachman, 2011 WL 223010, at *3 (holding that plaintiffs had standing where

plaintiffs alleged, in relevant part, that they did not intend to purchase health insurance before the

Act's effective date). As a result, the Court finds that Plaintiffs have failed to demonstrate that

they will be subject to the provisions of the Act, an initial step in this inquiry. [11]

---

[11] Indeed, the Court notes that contrary to what Plaintiffs appear to assert, the meager facts set
forth in footnote six to Plaintiffs' Opposition – the only facts asserted by Plaintiffs at all in this
matter –  appear to suggest that Plaintiff Purpura would not be subject to the Act's Individual
Mandate since, based on his age alone, Mr. Purpura appears to qualify for Medicare.  42 U.S.C. §
426(a) ("[e]very individual who has attained age 65 and is entitled to monthly [Social Security]
benefits. . .shall be entitled to hospital insurance benefits under Part A of [the Medicare Act].").
Because Medicare would satisfy the individual mandate, Mr. Purpura has not established that he
will be subject to the Act.  See, e.g., Mead, 2011 WL 61139, at *6 (holding that an individual
plaintiff lacked standing because she was sixty-two and, thus, would be entitled to receive
Medicare when the Act goes into effect in 2014.).  While the Mead court noted that individuals
over sixty-five may opt out of Medicare benefits,to do so, they must also forgo their Social
Security benefits.  Mead, 2011 WL 61139, at *6 (citing Social Security Administration, POMS
Section HI 00801.002 Waiver of HI Entitlement by Monthly Beneficiary, available at
http://policy.ssa.gov/poms.nsf/lnx/0600801002); see also Hall v. Sebelius, -- F. Supp. 2d --, No.
08-1715, 2011 WL 891818 (D.D.C. March 16, 2011).  In that regard, the Mead court noted that
while the Amended Complaint stated that plaintiff Mead intended to refuse to enroll in Medicare,
it did not aver that she intended to forgo her Social Security benefits.  Mead, 2011 WL 61139, at
*6.  "In the absence of such an allegation, the Court is not persuaded that there is a substantial
probability that she will reject her monthly Social Security checks and therefore not be covered
under Medicare Part A in 2014."  Id.  Here, Plaintiffs make no allegations whatsoever concerning
Social Security or Medicare.  Moreover, the Court is not clear what Plaintiff means by the
statement that the Act will cause him to lose "Medicare Advantage."  Thus, on its face, it appears
that Mr. Purpura's age alone would qualify him for Medicare.  In addition, Plaintiff's general
reference to the "privacy of his medical records" is insufficient to confer standing on Mr. Purpura
to challenge the Act .
       In addition, with regard to Mr. Laster, the Court is aware of no facts concerning Mr.
Laster other than that he is allegedly handicapped and that he believes the Act may subject him to
a tax on unspecified medical devices and that he may not be able to receive certain drugs.  Pl's
Opp. at n. 6.  Not only are these facts unspecific, they are also entirely conjectural and

However, even if Plaintiffs had sufficiently alleged that they would be subject to the Individual Mandate, Plaintiffs have failed to allege that the Individual Mandate has caused, or will cause them, a personal and particularized injury.   For example, unlike the individual plaintiffs in Thomas More Law Center and Liberty University, neither Mr. Purpura nor Mr. Laster have alleged that they have been forced to reorganize their financial affairs to prepare for the impending requirement to purchase health insurance or pay a penalty.  Thomas More Law Center, 720 F. Supp. 2d at 888; Liberty University, 2010 WL 4860299, at *7 .  Similarly, unlike the plaintiffs in Goudy Bachman, Plaintiffs here have not alleged that they have had to forego or will have to forego current expenditures to ensure their ability to comply with the Individual Mandate.  2011 WL 223010, at * 3.  Indeed, Plaintiffs have not alleged any facts whatsoever regarding their financial situations, let alone set forth any facts demonstrating their inability to make purchases as a result of the Act.  Instead, Plaintiffs assert their belief that a "violation of the Constitution is an immediate personal injury of every citizen of this [sic] United States," Pl's Opp. at 9; however, as discussed throughout this opinion,  such a generalized type of injury flies in the face of well-established Supreme Court precedent requiring every Plaintiff to demonstrate a concrete, particularized injury before he may be heard by a federal court.  Lujan, 504 U.S. at 573-75; United States v. Richardson, 418 U.S. at 179-80; Warth, 422 U.S. at 499-500.  Plaintiffs' generalized grievances about allegedly unconstitutional government action do not amount to standing.  Lujan, 504 U.S. at 573-75; United States v. Richardson, 418 U.S. at 179-80; Warth, 422 U.S. at 499-500.

---

hypothetical and, therefore, insufficient to confer standing on Mr. Laster.

IV.  CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have failed to demonstrate that they have standing to challenge the constitutionality of the Act.  Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' claims and Defendants' motion to dismiss is GRANTED.


Dated: April 21, 2011                        /s/ Freda L. Wolfson

                                             Freda L. Wolfson, U.S.D.J.